Good morning, James L. Feinberg, attorney for Obiel Luna Santillanes. There's three issues that we are appealing. I would ask the court that the second and third issue be considered on the brief and that I would specifically argue the GPS tracking device issue. Judge Edmonds in the evidentiary hearing did rule that this would be a Jones issue, but denied the motion to suppress based on standing and inevitable discovery. The standing issue is interesting. The entire investigation was called the Luna Santillanes conspiracy. From the beginning, the government alleged that the entire conspiracy was run and controlled by Mr. Luna Santillanes. Am I right to distill this down to the essence of your argument that we would have to agree that being the leader of a drug enterprise means that you are in control of and therefore have a reasonable expectation of privacy in all the vehicles used by various members of the conspiracy? Yes. That's it? Yes. Got any authority for that? No, Your Honor. And the reason I don't have any authority on that is that that particular issue has never been ultimately decided. The allegation of the government in every case that I've seen and participated in is that the vehicles are never in the name of the person who is controlling the conspiracy. There's always straw owners. Did your client testify in a motion to suppress pretrial? No, Your Honor.  Yes, Your Honor. Well, under the law, he could have testified that even though it wasn't in his name, he had control of it or it was his or something like that, right? He didn't do that. No, Your Honor. The reason he didn't do that is that nobody is going to admit. There's some authority that a statement you make in a pretrial suppression motion is not admissible against you later, right? That's true, Your Honor. But most people won't do it. Most won't do it and your client didn't do it. Your Honor, I've never had a case where the client at an evidentiary hearing is going to admit committing the crime and being the ultimate leader at either the evidentiary hearing or the trial. Well, he wouldn't have to admit committing the crime. He'd just admit that it's his car, he had control of it, period. You can have a very limited hearing on that, right? It comes out the same way.  I admit that I have total control of the cars. I had control because I had them put in other people's names. The government never brought in any of the owners of the vehicles to indicate whether or not how they got the vehicles in their name. Well, you want us to find that he, somebody to find that he had control of these vehicles without him ever having to say that he had control of the vehicles. Because the only evidence, as I understand it, is the CI, the confidential informant, forms a conclusion in his mind about who controlled this enterprise and therefore the cars, tells that to the investigator and the investigator testifies to that in court. So that's the underpinning of he controlled all these cars at all times. Absolutely. Is that double or triple hearsay? I would think it would be just single hearsay.  Single hearsay. One level is enough, I guess. So what's the exception to the hearsay rule that would then, upon which you can then use that statement as to what the CI was told by, as to what the CI's opinion was? Well, I guess it's, did you receive information from your CI that Santillanes was in control? Yes. And what is the question? It seems to me that's about as thin a reed as you could possibly offer us in connection with even the underlying factual predicate that he's in control. He doesn't say he's in control. He doesn't even claim to be in control. The government's allegation is that the entire conspiracy was under the control and leadership of Mr. Luna Santillanes. The CI gave information to the agent that Mr. Santillanes has control of the vehicles. That means that it's, they're his to determine who's going to drive them, when, where, and under what circumstances. You don't have to have them in your name in order to... Do we still utilize the old concept of reasonable expectation of privacy, which is always accompanied by the phrase that society would recognize as reasonable? Is that still good law? Sure. So really you're saying that society would recognize as reasonable the concept that the kingpin in a drug conspiracy has a reasonable expectation of privacy in all the cars that are used by all the co-conspirators. Is that it? I believe that if you poll, quote, members of society and give them that particular scenario and that the kingpin has total control of the vehicles and nobody uses the vehicles to commit any furtherance of the conspiracy without that person's permission, society would agree that the kingpin has control and that the underlings are only subject to the kingpin's directives. All right. And did you bring that out at the hearing? I did argue that Mr. Luna Santillanes had control of the vehicles and therefore he had standing. I wasn't given the hypothetical that Judge McKee gave me as far as whether or not society would recognize it, but I believe that if society would recognize it. And do you have a case? No, Your Honor. Actually, there's a case that comes out exactly the opposite way, isn't there? U.S. versus Padilla? But this case... Then they reject the Court of Appeals determination that a co-conspirator who had demonstrated joint control and supervision over the drugs in the vehicle had standing to contest the search of a vehicle they did not own. Well, that's a joint control. There's nothing in this particular case that indicates that any of the three or four people that were using the vehicles had joint control for purposes of... Joint control just really ends up saying more than one person has standing, doesn't it? Why is that properly distinguishable because it was joint control in one and your argument here is single control in this case? Well, single control means that as a kingpin, nobody uses the vehicles in furtherance of the conspiracy without permission from the person who has ostensibly ownership through straw owners and therefore control under the standing purposes. Let's assume that you're right about this whole issue. The government responds that they would have... They knew where the cars were and they knew where the drugs were and they would have stopped them anyway because they were also tracking this through the cell phones. They didn't know where the cars were, Your Honor. They knew where the telephones were. It does not mean that anyone that had the telephone was in fact in any of the vehicles that was a suspect. I thought they had been told by the CI that these folks were going in two cars to Chicago, buying drugs and coming back to Detroit in these two cars. But they didn't follow the cars. The cell phone is in one of these cars. They didn't follow the cars. The CI never indicated that anyone that was going to Chicago back and forth was utilizing... I understand they didn't follow the cars. But the precise question is, why is it not reasonable to conclude they would have discovered these drugs in these cars anyway by virtue of the locational device they were using, pursuant to a warrant as I understand it, with the phones? Because there was no evidence or no testimony that anyone that was making these trips back and forth was going to be utilizing the phone that they had a warrant for. That phone could have been used by someone maybe within the conspiracy. They had nothing to do with the transporting. It probably could have been, but it happened to be they had a warrant to track the location of that phone, right? Yes. And that phone was in the car that went to Chicago and came back. One of the cars. The drug car or the trailer car. Correct. And so why is that not... It wasn't the drug car. It may have been... Or the trailer car. So why is that not an inevitable discovery? Because assuming that they didn't have the tracking device, they wouldn't have known exactly where both cars were. The red aviator. It was just happenstance that they knew that the red aviator that they had the illegal tracking device put on was going to be at a certain place. The trip from Detroit to Chicago and back is over 300 miles. There's no way in the world that the inevitable discovery rule would have been in effect because they had to have been watching a particular location, not just any red aviator, but just that particular red aviator. No burgundy aviator. No color that looked like it was red. The judge here found that the officers had an independent source for the location data, and that was the phone. And that is factually incorrect or legally incorrect? I don't understand why. I'm just not understanding your argument as to why locating the phone, which they legitimately did, would not have led to the inevitable discovery. The phone was not in the red aviator. They never found that phone in the red aviator. So it was in another car, and we don't know where that car was in relation to the red aviator. So if they knew that there was a second car or a third car that was on the road... I thought the phone met the red aviator. It was in the car that met the red aviator or traveled with it. Well, it was on the same road that the red aviator was, but there was no testimony that there was any communication from that phone to anyone that was in the red aviator. They weren't using the communication between the cell phones and two cars to track the location of the phone. No, what I'm saying is there was no testimony that they had any connection between the car with the phone and the red aviator. I see. Okay. We get your point. Thank you. Any other questions? Thank you. Yes. Good morning. May it please the Court. Steven Karas on behalf of the United States. There are many complicated issues left to resolve after the Supreme Court decided Jones is the government's position. This case isn't one of them for the reasons that the panel was asking Mr. Feinberg about. Santillanes isn't a person who has standing to object to the tracking in this case. As Judge Seiler pointed out, he could have proffered or provided some evidence that he had some legitimate control or ownership of the Lincoln aviator. He did not do that. In fact, this was the exact scenario that happened in many cases, including when the Supreme Court decided Rackus v. Illinois. In footnote one of that opinion, the Court noted that because the defendant did not provide any testimony or any evidence, and it's his burden to prove that he has standing, they will assume that he doesn't have it. The theory offered by the defendant was in fact foreclosed by the Supreme Court's decision in Padilla. The Ninth Circuit had carved out an exception to the standing requirement that they called the co-conspirator exception. The Supreme Court, in a per curiam opinion, rejected that. So that reason is not sufficient to give this defendant standing. In addition, even if Santillanes did have standing, the exclusionary rule wouldn't apply because the heroin would have been obtained. As the panel was indicating, there were three things that were being tracked on the evening of August 14th. The two vehicles and the phone, the 6219 phone that there was a warrant for. Mr. Feinberg indicated that there was no connection between that 6219 phone and the defendants. That's incorrect. In fact, in early March of 2011, the confidential source, or CI, said that the person known as Seymour, or eventually identified as Defendant 2, Jimenez, was using both the 6219 phone and the red aviator for drug trafficking purposes. Then after that information, later on in March, there was a controlled delivery or sample set up, again using the same informant with the call, calling the 6219 phone, speaking to both Jimenez and Santillanes to arrange for the delivery of a sample of heroin to an undercover officer. So there was the connection between the 6219 phone and the defendants. Yes, if the 6219 phone didn't necessarily go to Chicago, then the inevitable discovery argument might lose some of its legs. But in addition to that fact, the government points out that Officer Murray testified that they knew which vehicle they were looking at. The informant told them that the drugs would be in this red Lincoln aviator, that they knew the license plate that they were looking for. Officer Murray also testified that there were multiple surveillance officers out. In fact, he testified that there were eight different surveillance officers out. And this is the thing that agents do all the time. They have a general idea as to when the vehicle or vehicles that they're looking for is going to be on a particular road or thoroughfare, and they look for the vehicle and they pull up behind the vehicle to see if it's the right vehicle and then make a traffic stop. That would have occurred in this case. And for those reasons, the government believes that the district court's motion to the denial of the defendant's motion to suppress should be affirmed, unless this panel has any questions. Well, Mr. Feinberg's argument is there's no tie to the GPS locating device on the phone that was in the other car to the red aviator. Were the cars traveling along together, or do we know? The confidential source before they left, the confidential source told the answer to your question, Judge McKeague, is yes, we do know. The reason is because both cars were being tracked, so they showed that they both did go in close proximity. Second, the confidential source before the tracking occurred said that these individuals would be taking two cars. They would be taking this particular trailblazer and the aviator. So they did know. As I was trying to articulate, the phone is connected to this group, this caravan of cars going to Chicago, because it's connected to the defendants. Were they monitoring the location of the caravan using the locating device in the phone as the caravan is going east? Officer Murray testified that yes, they monitored. He looked at all three things, the tracking devices on both vehicles as well as the phone. So without the tracking device, he might not have known exactly where the vehicle with the drugs was located at any given moment, but he knew the general area for the surveillance officers? Is that basically the testimony? That's correct, Your Honor. That was both the testimony and the government's position. He knew around the timing of when the car would be in the location because he knew that it was going with the cars were going together. Just out of curiosity, did the officers that saw the red aviator that pulled it over rely upon one of these devices at the time, or were they just placed by somebody else in the area and then they saw the car? I don't believe there is evidence or information in the record either way. Officer Murray was the one who testified that he was monitoring the three devices. He is not the one who saw the vehicle at first. They were in radio communication, and I don't know that Officer Murray could parse out which specific thing he was relying upon in that instance. Our position is that it doesn't matter if he was relying on the GPS device on the trailblazer or the aviator. Because he had the GPS information from the phone, they were in the area, and with eight surveillance officers at a time where Officer Murray testified, there was limited traffic that they would have found and stopped that aviator. So again, unless the panel has any questions. Looks like not. Thank you. Mr. Feinberg. I'm going to save the rest of the time for the remaining attorneys in the room, and unless the judges have any questions for me, I have nothing further to say. Excellent rebuttal. Thank you.